UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-21546-Civ-COOKE/TURNOFF

EUROSISTEMAS, S.A., *et al.*,

    Plaintiffs,

vs.

ANTILLEAN MARINE SHIPPING, INC.,
*et al.*,

    Defendants.

_____/

## ORDER DENYING MOTION TO REMAND

THIS MATTER is before me on the Plaintiffs' Motion to Remand. (ECF No. 8). Defendants Port Everglades Terminal, LLC ("PET") and Antillean Marine Shipping, Inc. ("Antillean") have filed responses. I have reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons stated below, Plaintiffs' Motion to Remand is denied.

### I. BACKGROUND

This is an action for negligence, breach of contract, and breach of implied covenant of good faith and fair dealing, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The facts recited here are taken from the Plaintiffs' First Amended Complaint.[1] On or about December 5, 2007, Plaintiffs Eurosistemas, S.A. ("Eurosistemas") and Dispositivos Electronicos de Media y Alta Tension ("Dematsa") placed an order with ABB, Inc. for the manufacture of two customized transformers. Plaintiffs hired Defendant Lufran International Corp. ("Lufran"), a freight forwarding company, to manage the transportation

---

[1] "To determine whether a claim arises under federal law, [a court] examine[s] the 'well pleaded' allegations of the complaint and ignore potential defenses . . .." *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

arrangements for the two transporters from Florida to the Dominican Republic.  Lufran hired Antillean, a shipping company, to ship the transformers to the Dominican Republic.  Antillean in turn contracted with PET to receive the transformers from ABB, Inc. in Miami, and transport them to Antillean's facilities in Port Everglades.

On or about March 7, 2008, ABB, Inc. transported the two transformers to Port Everglades on a flatbed truck.  As PET unloaded the transporters from the flatbed truck, it dropped one of the transformers causing damage to the unit.

PET received a claim shortly afterwards and retained a surveyor to investigate the accident.  Defendants Lufran and Antillean contacted PET on Plaintiffs' behalf in an attempt to finalize the claim process.  PET initially agreed to settle the case upon receipt of a formal claim letter.  However, it later refused to pay for Plaintiffs' damages or deliver the damaged transformer.

On August 13, 2010, Plaintiffs filed a complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  On March 18, 2011, Plaintiffs filed a seven-count First Amended Complaint asserting the following claims:  (i) negligence, against PET; (ii) breach of contract, against PET; (iii) breach of implied covenant of good faith and fair dealing, against PET; (iv) violation of FDUPTA, Fla. Stat. § 501.201, *et seq*., against PET; (v) negligence in handling of Plaintiffs' cargo, against Antillean; (vi) negligence in the handling of Plaintiffs' claim for damages, against Antillean; and (vii) negligence, against Lufran.

On May 3, 2011, PET removed the case from the Circuit Court to this Court.  Lufran and Antillean joined in the removal of this action.  On June 2, 2011, Plaintiffs moved this Court to remand this action to state court.

## II. LEGAL STANDARD

A defendant may remove an action to a U.S. district court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The burden of establishing federal jurisdiction falls on the party who is attempting to invoke the jurisdiction of the federal court. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Courts should strictly construe the requirements of 28 U.S.C. § 1441 (removal jurisdiction) and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Moreover, removal statutes are construed narrowly, and when the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

## III. ANALYSIS

Defendants contend that removal is proper because the the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, *et seq.*, preempts Plaintiffs' state law causes of action and provides an exclusive remedy for cargo damages claims. Plaintiffs argue that COGSA is inapplicable because the damage to the transformer did not occur as the transformer was being loaded or discharged from a ship. Additionally, they claim that their primary action pertains to the enforcement of a settlement agreement.

A party may remove state law claims to federal court when Congress expressly so provides or "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within

3

the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id*. Such a claim is removable under 28 U.S.C. § 1441(b), which permits a party to remove to federal court any claim that "arises under" federal law. *Id*.

COGSA governs all foreign trade contracts for the carriage of goods by sea to or from U.S. ports. COGSA § 13, 46 U.S.C. § 30701 (2006). The Act governs a carrier's duties from the time cargo is loaded onto a ship until it is discharged. *See* COGSA §§ 2-3, 46 U.S.C § 30701; *Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 785 & n.6 (11th Cir. 1999). With respect to cargo, the carrier must "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." COGSA § 2. Under COGSA, claims made pursuant to a bill of lading completely preempt state law causes of action and confer jurisdiction to federal district courts; plaintiffs are entitled to a single remedy and all other tort claims are excluded. *Polo Ralph Lauren v. Tropical Shipping & Constr.*, 215 F.3d 1217, 1220 (11th Cir. 2000) ("when it applies, [COGSA] supersedes other laws"); *see also St. Paul Fire & Marine Ins. Co. v. Marine Transp. Servs. Sea-Barge Grp., Inc.*, 727 F. Supp. 1438, 1442 (S.D. Fla. 1989).

The Harter Act, first introduced in 1893, was codified into COGSA in 1936. 46 U.S.C. § 30701 (indicating that "[t]his chapter codifies the Act of February 13, 1893 . . . (commonly known as the Harter Act)"). The Act applies before goods are loaded aboard a vessel and after the goods are discharged until such goods are properly delivered to their destination. *See id*.; *Crowley Am. Transp., Inc.*, 172 F.3d at 785 n.6 ("The Carriage of Goods by Sea Act, governs a carrier's duty from the time of loading to the time of discharge; the Harter Act governs a carrier's duty from the time of discharge to the time of delivery.").

4

Although COGSA expressly applies duties to carriers during the sea transport, the parties may agree to extend the applicability of the Act to the pre-loading and post-discharge period. COGSA § 7; s*ee B. Elliott (Canada) Ltd. v. John T. Clark & Son of Maryland, Inc*., 704 F.2d 1305, 1307 (4th Cir. 1983); *Neutax, S.A. v. Global Freight Servs.*, No. 02-21943, 2002 WL 31962180, at *1 (S.D. Fla. Oct. 25, 2002). Such an agreement must still comport with the Harter Act. COGSA § 12. To the extent that a bill of lading's provisions concerning pre-loading or post-discharge duties and responsibilities conflict with the Harter Act, they are null and void. *See B. Elliott (Canada) Ltd*., 704 F.2d at 1307.

The bill of lading at issue here extends COGSA to the pre-loading and post-discharge period.[2] Antillean's bill of lading incorporates COGSA with the following language: "This Bill of Lading shall have effect subject to the provisions of the [COGSA] in respect of carriage of goods to or from ports in the United States." (ECF No. 9, Ex. 1). The bill of lading also extends COGSA to pre-loading and post-discharge activity under section four, titled "Carrier Responsibility":

> The Carrier undertakes responsibility from the place of receipt (if named herein) or from the port of loading to the port of discharge or the place of delivery (if named herein) as follows:
> * * *
>> (2) Where loss or damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by water, the liability of the Carrier shall be determined as follows:

---

[2] Defendants provide a copy of the Bill of Lading as an exhibit to their Opposition to Plaintiffs' Motion for Remand. A court may review evidence outside of a complaint to determine whether the jurisdictional requirements for removal exist. *See Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 756 (11th Cir. 2010) ("No court of appeals decision we could find holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can.").

>   (a) If the carriage is to or from the United States of America, the "Carriage of Goods by Sea Act 1936" (COGSA) of the United States of America, shall apply.

(ECF No.9, Ex. 1).  Specifically, the bill of lading provides that COGSA applies where damage occurs between the time of receipt of the goods at the port of loading to the time of delivery at the port of discharge.  Defendants argue that the bill of lading also extends COGSA to the carrier's subcontractors, such as PET.

According to the First Amended Complaint, on March 7, 2008, ABB, Inc. transported the transformers in a flat bed truck to Port Everglades for shipment to the Dominican Republic. (Am. Compl. ¶¶ 12, 13).  PET was to unload the transformers from ABB's truck and deliver them to Antillean's facilities at Port Everglades.  (Am. Compl. ¶ 14).  As PET unloaded one of the transformers from the flatbed truck, it dropped the transformer and caused damage to it. (Am. Compl. ¶ 15).

It appears from a plain reading of the First Amended Complaint that Plaintiffs allege that the damage occurred before Antillean, the carrier, received the goods at the port of loading. Assuming the Complaint allegations as true, and without considering Defendants' additional argument that the bill of lading extends COGSA to third parties, it appears that COGSA might not apply here.  In that case, however, the Harter Act would govern.  *See Allstate Ins. Co. v. Int'l Shipping Corp.*, 703 F2d 497, 499 (11th Cir. 1983) ("Because the damage here undeniably occurred prior to the time the goods were loaded, the Harter Act, and not COGSA, controls."); *Birdsall, Inc. v. Tramore Trading Co., Inc.*, 771 F. Supp. 1193, 1199 (S.D. Fla. 1991) ("[A] contract of carriage that incorporates COGSA by reference necessarily incorporates COGSA's express deference to the Harter Act for [pre-loading and post-discharge periods].").  I need not decide at this stage of litigation whether COGSA or the Harter Act govern this action because

either Act confers federal subject matter jurisdiction to this Court. *See, e.g.*, *Jagenberg, Inc. v. Ga. Ports Auth.*, 882 F. Supp. 1065, 1071 (S.D. Ga. 1995). Thus, remand is not proper.

### III. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that the Plaintiff's Motion to Remand (ECF No. 5) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 31st day of August 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*